#### IN THE UNITED STATES DISTRICT COURT
#### DISTRICT OF SOUTH CAROLINA
#### CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert Samuel Pimentel, | ) | Civil Action No. 9:19-3035-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Thomas Plyler, Craig Harris, and | ) | |
| The Town of Mount Pleasant, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is the Magistrate Judge's Report and Recommendation ("R & R") that Defendants' motion for summary judgment be granted in part and denied in part. (Dkt. No. 67.) For the reasons set forth below, the Court adopts the R & R as the order of the Court to grant in part and deny in part Defendants' motion.

**I.     Background**

Plaintiff Robert Pimentel proceeds *pro se* to bring tort claims and claims arising under 42 U.S.C. § 1983 against two Mount Pleasant Police Department employees and the Town of Mount Pleasant. This action arises from Defendant Officer Plyler conducting an approximately 30-minute long traffic stop in July 2018, initiated because Plaintiff was driving his moped with no tail- or head-lights at approximately 10:45 PM. During the stop, Defendant Plyler deployed his K9, searched Plaintiff's person, and searched Plaintiff's moped including inside containers. After obtaining Defendant Plyler's incident report, Plaintiff filed a citizen's complaint with the Mount Pleasant Police Department. He met with Defendant Lieutenant Harris, a member of the Department's office of professional standards. The Department ultimately issued a written disposition that Plaintiff's citizen complaint was unfounded.

Plaintiff now brings claims for: (1) violation of the Fourth and Fourteenth Amendment by Defendant Plyler in his individual capacity; (2) violation of the Fourteenth Amendment by Defendant Harris in his individual capacity; (3) violation of § 1983 for failure to train by the Town of Mount Pleasant; (4) negligence/gross negligence by all Defendants, and (5) libel by Defendants Plyler and the Town. Defendants move for summary judgment on all claims, which the Magistrate Judge recommends be granted in part and denied in part. In light of Defendants' and Plaintiff's objections to the R & R (Dkt. Nos. 72, 73), the Court conducted a *de novo* review of the record, including Defendant Plyler's patrol vehicle's dashcam video.

## II.    Legal Standard

### A.    Review of R & R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with the Court. *See, e.g.*, *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where there are no objections to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B.    Motion for Summary Judgment

Rule 56 allows for summary judgment where the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). This means that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant, in response, must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence.'" *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

**A.     Construction of the Record, Including the Dashcam Video, on Summary Judgment**

The Court first addresses Defendants' objection that the Magistrate Judge's application of the proposition set forth in *Witt v. West Virginia State Police Troop 2*, 633 F.3d 272 (4th Cir. 2011) was in error. The Magistrate Judge cited to *Witt*'s statement that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe [the plaintiff's account], a court should not adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment." But the court cannot "reject a plaintiff's account on summary judgment" if the "documentary evidence, such as a video . . . offers *some* support for a governmental officer's version of events" *Id*.at 276 (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). (Dkt. No. 67 at n.2.) Applying the rationale of *Witt* and *Scott*, the Magistrate Judge explained that "[t]o the extent that [Defendant Plyler's dashcam video, which includes an audio feed off a microphone apparently connected to his body] clearly depicts the events at issue,

-3-

it will prevail over contrary evidence submitted by either side. However, to the extent that the Video is unclear or ambiguous, the undersigned cites to Plaintiff's version of events, as set forth in Plaintiff's Affidavit, executed on January 22, 2020. . . . Defendants have not submitted any declarations or affidavits, and there are no deposition transcripts in the record." (*Id.*)

Defendants contend that the dashcam video "contains sound and clearly depicts all events at issue," which "blatantly contradicts" Plaintiff's version of events. Having reviewed the video, the Court disagrees that it clearly depicts all events of the traffic stop. First, for instance, audio is not consistently or clearly picked-up from Plaintiff or the second officer, as a result of the microphone being apparently affixed to Defendant Plyler who periodically moves around the scene. Second, Defendant Plyler stands in between the camera and Plaintiff when searching Plaintiff's person, and they were both facing away from the camera. Although the video clearly shows Defendant Plyler reaching around to Plaintiff's groin and sweeping his hand in between Plaintiff's legs, the specific movement that Plaintiff alleges in his complaint is obscured from view.[1] The Court therefore overrules Defendants' objection to the Magistrate Judge's construction of the record in reference to *Witt* and *Scott*.

**B.     Violation of Fourth and Fourteenth Amendments by Defendant Plyler**

"[A] seizure that is lawful at its inception can nevertheless violate the Fourth Amendment because its *manner* of execution unreasonably infringes on rights protected by the Fourth Amendment." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (emphasis in original). A "traffic stop becomes unlawful when it is prolonged beyond the point at which tasks tied to the traffic infraction are—or reasonably should have been—completed, even if only for a de minimis

---

[1] The video ends when Defendant Plyler turns it off, after Plaintiff walks his moped out of frame and Defendant Plyler tells the second officer that this was the first time Arko, the K9, ever searched a moped.

-4-

period of time." *Id*. at 210 (internal quotation marks omitted). "Ordinary tasks incident to a traffic stop include inspecting a driver's identification and license to operate a vehicle, verifying the registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants." *Id*. A K9 sniff for narcotics around the vehicle is "not an ordinary incident of a traffic stop." *Rodriguez v. United States*, 575 U.S. 348. 356 (2015). "The critical question, then, is . . . whether conducting the sniff prolongs—*i.e.*, adds time to—the stop." *Id*. at 357. If it does, "in order to extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess reasonable suspicion or receive the driver's consent." *Bowman*, 884 F.3d at 210.

This K9 search lasted approximately 90 seconds and led to an approximately 19-minute long search of Plaintiff's person and moped. Defendant Plyler argues that he had reasonable suspicion to extend Plaintiff's detention beyond ordinary traffic stop tasks. To have such reasonable suspicion, an officer "must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot." *Id*. at 213 (internal quotation marks omitted). The officer "must either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *Id*.

The question, then, is whether Defendant Plyler put into the record either a specific fact demonstrating an objective justification for his belief that Plaintiff was engaging or about to engage in criminal activity, or his own articulation of particular suspicious behavior that indicated such criminal activity. Construing the record in a light most favorable to the non-movant, the Magistrate Judge found no such record evidence to justify Defendant Plyler extending the traffic stop beyond ordinary tasks and into a K9 sniff. The Court agrees.

Defendants argue that the video demonstrates Plaintiff was evasive and had a half-consumed gallon jug of orange juice, which Defendants contend are objective justifications for Defendant Plyler believing criminal activity was afoot. But a reasonable fact finder, construing those facts in a light most favorable to the non-movant, could conclude otherwise. While Defendants point to these two facts in particular, the video of course reflects other facts leading-up to Defendant Plyler's decision to conduct a K9 search: after reviewing Plaintiff's license or ID and asking for paperwork on the moped, he asks Plaintiff several questions[2] before then returning to his patrol car, where he obtains Plaintiff's license or ID record from radio dispatch. The dispatcher tells Defendant Plyler that Plaintiff has a suspended ID and a moped license with "two priors in the past five" including 2016 and 2018, and "a 97 ending indefinitely" and "an unlawful alcohol concentration ending indefinitely." Defendant Plyler returns to Plaintiff, asks if there is alcohol in the juice jug, and Plaintiff responds, "No." Defendant Plyler then asks if he can smell the bottle, and Plaintiff declines to consent. Defendant Plyler then tells Plaintiff that he is going to "run my dog around here and make sure he doesn't hit on any order of illegal narcotics."

As the Magistrate Judge noted, Defendants did not submit into the record an affidavit or declaration from Defendant Plyler. This Court must draw all reasonable inferences from the record, which consists of the video, in favor of the non-movant.[3] And from the record, a reasonable

---

[2] Defendant Plyler's questions were: "What's in this bag? [hanging off the handlebars]" (inaudible response); "You got any alcohol in here?" (response: "Uhm, no…."); if Plaintiff's pocket knife was the only weapon he had on him ("Yeah"); if the moped's front lights work (inaudible response); if he has ever been arrested (inaudible response); "Like for misdemeanors?" ("Yeah…"); telling Plaintiff his "criminal history is concerning to me"; asking "Nothing illegal on you?" (inaudible response); "What do you do?" ("I'm a message therapist…"); "So what are you doing over here?" (inaudible response); "Where'd you interview at?" ("I would rather not disclose that because I don't want them to know where I'm gonna be at… I did an interview right here in Mount Pleasant…"); and "Anything in that bag I need to know about?" (inaudible response).

[3] The record contains a supplemental expert report in which Don L. Wieder opines that "SPO Plyler's actions were in accordance with those of a reasonably trained officer, his actions were objectively reasonable and his actions did not violate any of the plaintiff's rights despite what

fact finder could conclude that Defendant Plyler did not have reasonable suspicion to extend the traffic stop into a K9 search and did not have probable cause to search the Plaintiff, the moped, or its containers.[4]  "It is well-established that a 'reliable' dog alert establishes probable cause that illegal drugs are present." *United States v. Diaz*, No. 2:16-cr-0055-DCN, 2018 WL 1697386, at *14 (D.S.C. Apr. 6, 2018).  "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 248. This record contains no such evidence relating to the K9's training or ability to smell narcotics.

Defendant Plyler separately argues that this claim must be dismissed for his qualified immunity, under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Iko v. Shreve*, 535 F.3d 225, 237 (4th Cir. 2008).  "To overcome a defendant's claim of qualified immunity, the court must determine: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Williamson v.*

---

plaintiff alleges in his Complaint." (Dkt. No. 46-1 at 1.)  The report makes no mention of facts supporting reasonable suspicion, and the opinions are based on a list of materials contained in an Exhibit that is not appended to the filing.  The Magistrate Judge found that this expert's opinion on what Defendant Plyler allegedly considered and believed during the traffic stop is inadmissible for purposes of summary judgment. *See, e.g.*, *Newkirk v. Enzor*, No. 2:13-cv-1634-RMG, 2017 WL 823553, at *4 (D.S.C. Mar. 2, 2017) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence" and cannot offer legal conclusions on the plaintiff's claim). The Court adopts that finding.

[4] The video reflects that when Defendant Plyler instructed the K9 to "go find your drugs," it quickly walks past the moped.  Defendant Plyler then guides the K9 by its leash back to the moped's area, and the K9 again walks past it.  Defendant Plyler guides it back again to the moped, and the K9 passes it a third time.  Defendant Plyler guides the K9 back again, and taps on the moped twice with his hand.  The K9 then jumps up slightly to touch that area of the moped with its nose.  The K9 sits back down and looks at Defendant Plyler, who quickly tosses a toy at its feet and repeatedly praises it as a "good boy."  With the limited record before the Court on the K9's training and the circumstances leading to its alleged alert, and viewing the record in a light favorable to the non-movant, a reasonable fact finder could conclude that the K9 did not alert to narcotics.

*Stirling*, 912 F.3d 154, 186 (4th Cir. 2018). "[A] genuine issue of material fact regarding whether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (internal quotation marks omitted). The Magistrate Judge found that there exists a genuine issue of material fact as to whether Plaintiff's Fourth Amendment right was violated by Defendant Plyler prolonging the traffic stop into a K9 search, and therefore that Defendant Plyler is not entitled to dismiss the cause of action for qualified immunity at this stage of the proceeding. The Court adopts that recommendation.

C.    **Violation of Fourteenth Amendment by Defendant Harris**

Plaintiff alleges that Defendant Harris violated his Fourteenth Amendment by failing to conduct an impartial intake, thoroughly investigate or timely resolve the citizen's complaint process. The Magistrate Judge recommends dismissing this claim because the Fourteenth Amendment does not confer Plaintiff a right to have his complaint documented or resolved in a particular manner. *See, e.g.*, *vineyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (no substantive or procedural due process right to internal investigation by sheriff's office into complaint of constitutional violation). Moreover, there is no record evidence that Defendant Harris violated any constitutional right and, therefore, he is entitled to qualified immunity. Plaintiff makes no objection to this recommendation, and the Court adopts it. This claim is dismissed.

D.    **Violation of § 1983 by Defendant Town of Mount Pleasant**

Plaintiff alleges that Defendant Town of Mount Pleasant violated his constitutional rights by having "inadequate and unconstitutional policies, procedures [and] customs that directly caused their law enforcement to violate citizens." The Town could be held liable for any violation of Plaintiff's constitutional rights by its employee, Defendant Plyler, "only where the constitutionally offensive actions of city employees are taken in furtherance of some municipal policy or custom." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Here, however, there is no

record evidence that Defendant Plyler's alleged unconstitutional conduct was the result of any particular policy or custom that was promulgated, implemented, condoned or put into place by the Town. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) ("[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury."). And, to the extent Plaintiff alleges a claim against the Town for failure to train, the record is devoid of evidence of any specific deficiency in training or pattern of unconstitutional conduct warranting different training. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

In his objection to the R & R, Plaintiff requests to supplement the record with a Request for Admission propounded on the Town that stated, "Admit that all of Plyler's conduct towards me was entirely by the Town's policy," with the Town's response that stated, "Admitted that Officer Plyler acted in accordance with Policy & Procedure at all times relevant to the present case." (Dkt. No. 73 at 1.) The Court approves these statements, as represented, to become a part of the record on summary judgment; however, this supplemented record contains no dispute of material fact as to whether Defendant Plyler's allegedly unconstitutional acts were the result of a specific policy endorsing such acts. For these reasons, this claim is dismissed.

E.     **Negligence/Gross Negligence by All Defendants and Libel by Defendants Plyler and Town of Mount Pleasant**

Defendants argue that Defendants Plyler and Harris are improper defendants to these state law claims under the South Carolina Tort Claims Act, and that the record fails to support the torts' elements in any event. The Magistrate Judge notes that Plyler and Harris's actions fall within the scope of the SCTCA as government employees performing their official duties. *See* S.C. Code Ann. §§ 15-78-30(c), (i), 15-78-200. "[W]hen an entity is sued because of the alleged tort of an employee acting within the scope of his or her employment, the Tort Claims Act provides that only

the agency shall be named as a party." *Kinard v. Greenville Police Dep't*, No. 10-cv-3246, 2011 WL 3439292, at *6 (D.S.C. Aug. 5, 2011). The Court adopts that finding and dismisses these claims as to Defendant Plyler and Defendant Harris.

As to these claims against Defendant Town of Mount Pleasant, the Magistrate Judge found that the record, when construed in the non-movant's favor, reflects a genuine issue of material fact regarding whether Defendant Plyler failed to fulfil his duty to act with reasonable care when he prolonged the traffic stop, requiring reasonable suspicion, with the K9 search. The Magistrate Judge also found that because there is no evidence that the allegedly libelous statements in the incident report were ever published to a third-party, the claim for libel against the Town fails. The Court adopts those findings: the claim against Defendant Town of Mount Pleasant for negligence/gross negligence is not dismissed and the claim for libel is dismissed.

### IV.     Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's R & R (Dkt. No. 67) as the order of the Court. Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claim against Defendant Plyler arising under § 1983 is not dismissed. Plaintiff's claim for negligence/gross negligence by Defendant Town of Mount Pleasant is not dismissed. The remaining claims are dismissed.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

March 16, 2021
Charleston, South Carolina